UNITED STATES, Appellee,

v.

Orlando A. ADAMES, Second
Lieutenant, U.S. Army,
Appellant.

No. 49327.
CM 443150.

U.S. Court of Military Appeals.

March 31, 1986.

For Appellant: *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Major Edwin D. Selby, Captain Donna Chapin Maizel* (on brief).

For Appellee: *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Thomas J. Leclair, Captain John F. Burnette* (on brief); *Captain Andrew D. Stewart* and *Captain Richard J. Fadgen.*

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a general court-martial consisting of military judge alone. Charge I, laid under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, contained three specifications which were identical in language with the three specifications of Charge II, laid under Article 133, UCMJ, 10 U.S.C. § 933. On defense motion, two specifications of Charge I and one specification of Charge II were dismissed on the ground of multiplicity.

After hearing the evidence, the judge convicted Lieutenant Adames under Article 134 of committing indecent, lewd, and lascivious acts on May 8, 1982, with Private E-1 Kelly Cooper, a female soldier. He also found appellant guilty under Article 133 of wrongfully fraternizing with Private Cooper and some other female soldiers at the same time and place. The language of this latter specification—after the judge had excepted certain allegations[1]—was that Adames

did, at Indianapolis, Indiana, on or about 8 May 1982, while assigned as a cadre member of Company D, 2d Battalion, Troop Brigade, US Army Soldier Support Center and Fort Benjamin Harrison, Fort Benjamin Harrison, Indiana, wrongfully and improperly fraternize and associate with Private E1 Cynthia R. Klarer, Private E1 Susan Diane Thornton, and Private E1 Kelly J. Cooper, U.S. Army, members of Company D, 2d Battalion, Troop Brigade, US Army Soldier Support Center and Fort Benjamin Harrison, Fort Benjamin Harrison, Indiana, on terms of military equality by socializing with ... [the same soldiers], subordinate members of the said Company D, 2d Battalion, Troop Brigade, and that under the circumstances *such conduct was prejudicial to good order and discipline in the armed forces.*[2]

(Emphasis added.)

The military judge sentenced appellant to be dismissed from the Armed Forces; and, after approval by the convening authority, the Court of Military Review affirmed the findings and sentence in a short-form opinion. We granted review of this specified issue:

WHETHER SIMPLE FRATERNIZATION BETWEEN A COMMISSIONED OFFICER AND ENLISTED PERSONS IS AN OFFENSE IN VIOLATION OF THE UNIFORM CODE OF MILITARY JUSTICE [CITATION OMITTED].

We hold that the acts of which appellant was convicted are punishable under the Uniform Code, so we affirm.

I

Appellant was a member of the permanent party of the training command at Fort

---

1. The excepted allegations were that appellant had fraternized with still another female soldier and had drunk alcoholic beverages with the trainees. The military judge also acquitted appellant of a second specification under Charge II, which asserted that Adames had wrongfully fraternized and associated with Private Lisa Heiston, by playing cards and drinking alcoholic beverages with her on March 13, 1982.

2. These allegations seem designed to charge an offense under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, rather than under Article 133, UCMJ, 10 U.S.C. § 933. As has already been mentioned, the same language was used in a specification which was preferred under Article 134 and was dismissed by the military judge for multiplicity.

Benjamin Harrison, Indiana. As such, he was assigned to the training cadre of the Troop Brigade and functioned as executive officer of a company of soldiers, including females, undergoing Advanced Individual Training. Another member of the training cadre, a Specialist Borge, gave a party to celebrate his upcoming marriage.[3] Along with appellant, a number of trainees attended the party, which was held off-post at a hotel in Indianapolis, Indiana.

Prior to the party, Adames encountered Privates Klarer and Thornton in the post bowling alley. He specifically solicited their company at the party: The tenor of the requests was for the women to spend time alone there with him. Later, at the party appellant followed Private Cooper into a restroom where he fondled her breasts and vaginal area and placed her hand on his exposed, erect penis.[4]

Privates Klarer and Thornton both testified that appellant's acts had lowered their respect for him. They believed that Adames should not have attended the party because he was an officer. In addition, Private Lisa Heiston, who was also a member of the company, testified that her opinion of appellant was lowered because he was at the party.[5] Thornton and Heiston also stated that, to their knowledge, appellant was the only officer present at the party.

## II

Appellant now contends that attending the party was "simple fraternization" and should not have been made the subject of a criminal prosecution.[6] In his view, there no longer exists "a custom of the service" prohibiting social intercourse between officers and enlisted persons; and certain relationships between officers and enlisted persons—although once absolutely forbidden—are now allowed. Adames claims

that this relaxation of custom, coupled with erratic, if any, enforcement of sanctions, precludes prosecution of his conduct because of the absence of notice that it might be criminal.

To a large extent, appellant's arguments are based on the ruling by the United States Air Force Court of Military Review that there now is no "custom of the service" which prohibits social activities—even sexual intercourse—between officers and enlisted personnel in the Air Force. *United States v. Johanns*, 17 M.J. 862 (1983). *See* para. 213*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). We affirmed that court's decision that Johanns was innocent of wrongful fraternization because, if—as found by the court—no prohibiting custom existed in the Air Force, he had been denied constitutionally required notice that his intended conduct was illegal. *United States v. Johanns*, 20 M.J. 155 (C.M.A.), *cert. denied*, — U.S. —, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).

In this case, however, we do not perceive the defect that existed in *Johanns*. The key to the distinction is found in the allegation that the enlisted persons were "subordinate members" of the same company as appellant. As interpreted by the military judge, this allegation required the Government to establish that the enlisted females were "subordinate to him both in grade and assignment."

Proper relationships between superiors and subordinates are vital to discipline in the armed forces. Where the subordinates are trainees, the Army has an enhanced interest because trainees, who usually have limited military experience and are subject to very intensive supervision and control by their superiors, are vulnerable to the taking of unfair advantage by those superiors. In turn, such conduct by the superiors di-

---

3. Appellant was not charged with fraternizing with Specialist Borge.

4. These acts provided the basis for convicting appellant of committing a lewd act with Private Cooper.

5. Heiston was the trainee named in the specification of which Adames was acquitted.

6. In view of our resolution of this case, we shall not attempt to determine what conduct constitutes "simple fraternization" and what criminal liability, if any, it creates.

minishes the respect with which they are viewed by the trainees—a respect essential for inculcating discipline. To avoid these consequences, almost every training command has directives which prohibit various types of social relations between trainees and the officers and noncommissioned officers who constitute the command's permanent party or cadre. *Cf. United States v. Mayfield,* 21 M.J. 418 (C.M.A.1986).

■ Under these circumstances officers assigned to a training installation should be aware that their social contacts with trainees are subject to restrictions. Moreover, they should recognize that violation of these restrictions may affect good order and discipline in the armed forces and so may contravene Article 134. Accordingly, we conclude that appellant had adequate notice that the conduct now being prosecuted was illegal.

■ By reason of the language employed in drafting the charges, the military judge ruled that the fraternization offense required the Government to prove both that appellant's conduct was prejudicial to good order and discipline in the armed forces and was unbecoming an officer. However, even if only conduct prejudicial to good order were established by the Government, Adames was guilty of an Article 134 violation. Because dismissal of an officer is no longer mandatory for unbecoming conduct—as it was under Article of War 95, 10 U.S.C. § 895—the practical consequences of finding appellant guilty of an Article 134 violation are the same as for an Article 133 violation.

■ Accordingly, we shall leave for some other day an examination of the contacts by an officer with enlisted persons which constitute conduct unbecoming an officer under Article 133. So far as Article 134 is concerned, our reading of the record fully supports the trial judge's finding that appellant's attendance at this party with the female trainees—even though at a place off-post—was contrary to the maintenance of good order and discipline at the training installation. No other officer was present; and the party apparently featured sexual promiscuity and the drinking of alcoholic beverages, so Adames should not have been there. Moreover, he should not have been indicating sexual interest in some of the trainees because, by reason of his position in their training company, they might have felt under compulsion to yield to his advances. Of course, the tactics he employed in seeking their companionship would—and did—directly tend to lower him in the esteem of the various female trainees. Because the actual and clearly predictable impact of appellant's conduct on the discipline and morale of the unit was adverse, he was guilty of violating Article 134.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

# UNITED STATES COURTS
## of
# MILITARY REVIEW